IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Darrell J. Mickell,  )
        )    Civil Action No. 6:15-4656-RBH-KFM
                Plaintiff,  )
        )    **REPORT AND RECOMMENDATION**
        vs.    )
        )
Bryan Stirling, C. Reynolds, Mr. Davis,  )
Mr. Sharpe, Mr. Graham, Mr. Nolan,  )
Mr. Williams, Ms. Shaw, and Ms. Smith,  )
        )
                Defendants.  )
_____)

        This matter is before the court on the defendants' motion for summary judgment (doc. 56).  The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.  The defendants are employees of the South Carolina Department of Corrections ("SCDC").  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the district court.

## FACTS PRESENTED

        In his complaint filed November 18, 2015, the plaintiff describes himself as mentally-ill (comp. ¶ 43), and alleges that the defendants violated his Eighth Amendment rights while he was housed in the Restricted Housing Unit ("RHU") at SCDC's Lee Correctional Institution ("Lee"). He claims he was placed in the RHU in June 2015[1] due to "disciplinary infractions" (*id*. ¶ 14).  While in the RHU, the plaintiff alleges he was (1) denied regular showers in violation of SCDC policy, (2) deprived of sufficient lighting in his cell, and

---

[1]A chronological review of the plaintiff's complaint and attachments indicates that the plaintiff was placed in the RHU in June 2014.  In his response in opposition to summary judgment (doc. 88), the plaintiff clarifies that he was housed in the RHU from June 2014 until his release to general population in November 2014.  He was again housed in the RHU from February 2015 until his release to general population in April 2015.

(3) served cold food (*id*. ¶¶ 14-47).  Following his release from the RHU to Lee's general population in April 2015, he was allegedly housed in a cell that did not contain a locker or table (*id*. ¶ 34).  He notified the staff of all these complaints, to include step one and step two grievances he filed between July 2014 and July 2015 (doc. 1-3, pp. 1-15).  As a result of these conditions of his confinement during this period, he claims to have suffered skin ailments and itching from the lack of showering, blurred vision and headaches from the poor lighting, and "suffering many nights without eating due to cold food being served," resulting in weight loss (comp. ¶¶ 46 - 50).  He also alleges that without a table in his cell, he suffered back pain from sitting on the floor and that, without a locker, he feared that his personal items would be stolen (*id.* ¶¶ 51-52).

The defendants filed an answer (doc. 30) denying that they violated the plaintiff's rights and raising various defenses, including qualified immunity.  With their motion for summary judgment, the defendants provide the affidavit of Lee's Associate Warden Willie Davis (doc. 56-3).  Mr. Davis explains that inmates in the RHU have fewer privileges than those in other areas of the prison (*id.*, Davis aff. ¶ 6).  He states that showers are permitted for RHU inmates three days a week when security permits, but in any event these inmates have a sink in their cells with soap and water so as to maintain good hygiene (*id*. ¶ 7).  As for cell lighting in the RHU, Mr. Davis admits that light fixtures may be damaged by inmates, but that the Lee maintenance staff "constantly" makes repairs (*id*. ¶ 9).  He describes regular lighting in the RHU as at a normal setting, and that additional light in RHU cells is provided through an opening in the cell door, as well as an opaque window allowing exterior light (*id*. ¶¶ 10-11).  As for the plaintiff's complaints about his meal service, Mr. Davis says that the RHU staff attempts to serve meals "at the appropriate temperature as selected by the dietician for both safety and palatablility", and that dissatisfied inmates may be re-served if resources are available (*id*. ¶ 14).  Regarding the plaintiff's allegations that he was denied a locker and a table in his cell, Mr. Davis also explains that lockers and tables have been removed from the RHU due to security

2

concerns[2] (*id*. ¶ 12).  Also included with their motion for summary judgment are the plaintiff's medical records from May 2015 through February 2016, showing that the plaintiff had numerous encounters with the medical staff, with no report of the physical complaints that he raises here (doc. 56-2, pp. 1-16).

With his response in opposition to summary judgment (doc. 88), the plaintiff provides additional medical records covering his stay in the RHU throughout the periods at issue here (doc. 88-3).  As noted by the plaintiff, the medical records do reveal that he discussed the lack of showering with the medical staff (encounters 381 and 382), though they are silent as to any resulting serious conditions raised by the plaintiff or addressed by the medical staff.  These  records also make no reference to any contemporaneous complaints of serious effects of poor lighting or cold food he alleges in his complaint, nor are there records of reported back pain attributable to his cell furnishings.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

---

[2] The plaintiff alleges that this deprivation occurred after he was released from the RHU, back to "general population" (comp. ¶ 34).  Regardless, a review of the staff response to a corresponding grievance (doc. 1-3, p. 12) shows that the same security concerns applied to the plaintiff's cell after his release from RHU.

3

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Conditions of Confinement

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  To succeed on any Eighth Amendment claim for cruel and unusual punishment regarding the conditions of his confinement, a prisoner must prove that he was deprived of a basic human need and that prison officials were deliberately indifferent to that deprivation.  *See Strickler v.* Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). The first prong of the *Strickler* analysis requires an objective showing that the deprivation was sufficiently serious, such that significant physical or emotional injury resulted from it, while the second prong is a subjective test requiring evidence that prison officials acted with a sufficiently culpable state of mind.  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

### 1. Showers

The plaintiff contends that he was denied a shower for as much as 37 days in a row while he was housed in the RHU (doc. 88, p. 1), but he does not deny that he had access to soap and water in his cell, as reported by the Associate Warden (Davis aff. ¶ 7).

4

Instead, he claims did not want to undress in front of his roommate, and should have been provided a shower in accordance with SCDC policy (doc. 88, p. 1.). Undoubtedly inmates should have reasonable access to water and cleaning supplies to maintain personal hygiene, but they are not entitled to select their preferred method for cleaning themselves. As argued by the defendants, bathing opportunities may be severely reduced or curtailed without violating an inmate's Eighth Amendment rights. *See, e.g., Shakka v. Smith*, 71 F.3d 162, 168 (4th Cir. 1995) (inmate's constitutional rights were not violated where he was not given access to shower because he had access to water with which to clean himself). Moreover, a prison official's failure to follow a published policy for a justifiable reason does not give rise to a constitutional violation, and particularly here, in light of the plaintiff's undisputed access to soap and water, the denial of showers for security concerns is likewise not actionable. Additionally, a review of the plaintiff's medical records shows that despite his complaints, the plaintiff's hygiene and grooming were "WNL" (within normal limits) (doc. 88-3, encounters 381 and 382). While he once attributed "itching" to not showering, he reported to medical staff the following day that "all these issues are cleared up" and that he "has no problems now" (encounter 422). Accordingly, this claim is baseless and should be dismissed.

### 2. Poor lighting

The plaintiff's complaints of inadequate lighting in his RHU cell do not support an Eighth Amendment claim. While extreme deprivations of light might amount to a constitutional violation (*see Richard v. Reed*, 49 F. Supp. 2d 485 (E.D.Va. 1999), aff'd, 188 F.3d 503 (4th Cir. 1999), the plaintiff has made no such showing here. Though the Associate Warden admits that lighting fixtures in the RHU were often in disrepair due to inmate damage, he testifies that repairs were "constantly" being made (Davis aff. ¶ 9). Regardless, the plaintiff admits that his cell had sunlight from an exterior window and interior light from an opening in his cell door (doc. 88, p. 3). As the plaintiff cannot show that he suffered a serious deprivation of light, this claim is meritless. As with his showering complaints, the records provided by both parties cite no ongoing medical problems

experienced by the plaintiff from poor lighting.  In the medical record dated April 22, 2015, the plaintiff reported trouble reading from the lack of light in his cell, but there is no report of blurred vision or headaches as he alleges in his complaint.  In any event, the follow-up medical entry the next day records that the plaintiff told the medical staff that the problem had been resolved (doc. 88-3, encounter 422).

### 3. Cold Food

Furthermore, the plaintiff's cold food claims do not create a constitutional violation. *Reed v. Olson*, C.A. No. 4:09-3126-JFA-TER, 2011 WL 765559, at *3 (D.S.C. Jan. 19, 2011) ("The fact that the food . . .sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").  A thorough review of the medical records relied upon by the plaintiff shows that the plaintiff's occasional complaints regarding his food dealt only with the temperature at which it was served; there are no reports of inadequate food.  On a March 23, 2015, visit to the mental health clinic, the records show that the plaintiff discussed his food intake with staff, and he was encouraged to eat his meals (doc. 88-3, encounter 417).  The plaintiff has failed to present evidence that the defendants were deliberately indifferent to his diet and health and, as such, he has failed to support this claim.

### 4. Cell Furnishings

The plaintiff has failed to establish a viable conditions of confinement claim based on the furnishings in his cell.  As the Associate Warden reasonably explains, some items are removed from cells if staff believes that inmates may dismantle them for weapons (Davis aff. ¶ 12).  Given the plaintiff's well-documented mental health and admitted disciplinary issues (doc. 88-3), the defendants must be afforded wide discretion in furnishing the plaintiff's cell for the security of the plaintiff and others.  Moreover, the medical records do not support the plaintiff's claims that he suffered backaches from lacking a table and are likewise without reference to his anxiety about being without a locker, so his claim cannot survive summary judgment.

***Qualified Immunity***

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, the plaintiff's allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the undersigned finds the defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 56) be granted. The attention of the parties is directed to the notice on the next page.

IT IS SO RECOMMENDED.


December 19, 2016                                    s/ Kevin F. McDonald
Greenville, South Carolina                        United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).